**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Jonathan R. Zilba,  Case No. 3:15CR101

    Petitioner-Defendant,

v.  **ORDER**

United States of America,

    Respondent-Plaintiff.

This is a post-conviction relief proceeding under 28 U.S.C. § 2255.

The defendant, convicted on his plea of guilty to operating a fraudulent mortgage loan restructuring scheme, challenges his twenty-one month within-Guideline sentence. He claims his attorney provided ineffective assistance of counsel (IAC) during his sentencing.[1]

To prevail on his claim, the defendant must prove that counsel's performance was deficient and that, but for that deficient performance, there was a reasonable probability of a different result. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). I discuss each of his five substantive grounds for relief and related demand for resentencing or an evidentiary hearing separately.

There being no merit whatsoever to any of defendant's claims, I dismiss the motion and decline to grant a certificate of appealability.

---

[1] The defendant's plea agreement included a waiver of the right to challenge his conviction or sentence by way of direct appeal or otherwise, except with regard to an IAC claim, or a claim that the sentence exceeded the statutory maximum – which it did not.

### 1. Non-Specific IAC Claim

Ground One states a generalized, non-specific IAC claim. Both this claim and the supporting memorandum as to it are conclusory. Neither contains factual assertions, case citation, or discussion of applicable legal principles. That being so, defendant is not entitled to relief as to his first claim.

### 2. Waiver of the Right to Appeal

Defendant raises two IAC issues relating to his waiver of the right to appeal in his written plea agreement: namely, that counsel: 1) failed to file a notice of appeal as to his sentence; and 2) had him give up his appellate rights in his plea agreement.

### A. Failure to File Notice of Appeal

A lawyer who does not file a notice of appeal when asked to do so fails to provide constitutionally adequate assistance. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000).

But to obtain relief on this basis, the defendant must have asked attorney to file such notice. *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) ("The Constitution is only implicated when a defendant actually requests an appeal, and his counsel disregards the request.") (internal citations omitted). Defendant does not claim he instructed his attorney to file a notice of appeal. That being so, this claim is without merit.[2]

### B. Waiver of the Right to Appeal Did Not Involve IAC

Second, Zilba alleges that counsel performed deficiently by causing his plea agreement to waive, except to a very limited extent, his right to challenge his conviction or sentence.

---

[2] Moreover, as discussed *infra*, Zilba's sentence was entirely lawful. Had the defendant demanded and his attorney pursued an appeal, the Circuit would have affirmed the sentence on its merits. More likely, the Circuit would have dismissed the appeal in light of the plea agreement's waiver. Thus, failure to pursue an appeal caused no prejudice.

The simple answer to this frivolous contention is: no waiver, no deal. To gain the benefit of avoiding a substantially higher sentence, Zilba had to forgo nearly all future challenges to his conviction. Just as he got what he most wanted – to minimize his prison time - so, too, the government got what it most wanted – finality.[3]

In any event, the defendant cannot show prejudice. He presents no plausible basis for anyone to believe he might have prevailed, had he not accepted the plea agreement, at trial. Indeed, the government's statement of its factual basis shows that no rational jury would have acquitted. Nor has Zilba provided reason to believe that, following a guilty verdict, I would have imposed a sentence lower than that which he received after his plea. Thus, even if the lawyer somehow could have avoided the waiver in the plea agreement, conditioning the plea on a waiver of the right to appeal caused no prejudice.

### 3. The Criminal History Was Correctly Calculated

In his third claim, defendant contends his attorney failed to challenge the inclusion in his criminal history computation of convictions that occurred more than ten years before his conviction in this case.

There was no error in the conclusion that the criminal history category was III. He had six misdemeanor traffic sentences within the ten years preceding the onset in October 2011 of his crimes. *See* Guideline § 4A1.2(e)(2). The defendant had accumulated one criminal history point each for: operating under the influence in 2002, sentenced, 2003; OVI in 2004, sentenced, 2004; misdemeanor assault in 2005, sentenced, 2007; OVI in 2005, sentenced, 2005; driving without a license in 2007, sentenced, 2008; and expired driver's license in 2009, sentenced, 2010.

---

[3] Well, near finality, as things have turned out. But for the government, that still is better than having to undergo the expense of preparing for and going to trial and defending, in the event of a conviction, an appeal.

However, under Guidelines § 4A1.1(c), these prior convictions generated only four points, resulting in the category III criminal history computation.

There was no error in that computation, and thus there is no basis for this portion of the defendant's IAC claim.

## 4. The Defendant Did Not Play a Minor or Minimal Role

The defendant claims that he played a minor or minimal role in the crimes. He claims his attorney should have persuaded me that such was the case under Guideline § 3B1.2. In his view, it is "very obvious" that he was barely involved in the crime. In support, he argues that the majority of the losses attributed to him related to a single victim.

Under Guideline § 3B1.2(a), (b), there is a four level reduction in the base offense level for having been a minimal participant, and a two level reduction for having been aa minor participant. These reductions do not apply unless there was more than one participant in the criminal activity. Guideline Commentary to § 3B1.2, n.2.

The Commentary states that determination of a lesser role in an offense "is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case." *Id.* In making this determination;

> [A] court should consider the following non-exhaustive list of factors:
>
> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v) the degree to which the defendant stood to benefit from the criminal activity.

*Id.* § 3B1.2, n.3(C).

According to the defendant, when his conduct is compared with other participants, he was barely involved, as he was just helping out a friend. In that capacity, he claims, he had nothing to do with planning, organizing, and decision-making, and he had no discretion in executing the fraud. He also points out that the restitution obligation was lower.

At sentencing, I did not share, and do not now share, defendant's rosy-tinted view of his culpability and degree of involvement. In making those assertions, the defendant arguably recounts his former underling relationship with codefendant Jason Keating. But he was the principal in the crimes to which he pleaded guilty, which he undertook after leaving Keating and embarking on his own, along with cohorts Kanary and Schmenk.

The prosecutor's statement at sentencing accurately summarized the defendant's role as set forth in the plea agreement and Presentence Report:

> From — the plea agreements were based on conduct that they engaged in after they left the employ of Mr. Keating. That seemed the most clear-cut way of identifying individuals who clearly knew how the scheme worked. . . . These defendants, after they left with Mr. Keating, opened their own bank accounts, took in victim money and then spent it, showing that they were fully aware of how the scheme worked. Mr. Zilba did that, which is similar to what Mr. Schmenk did, and was similar to what Ms. Kanary did, just spent a little more and gathered a little more and was also a bit more formal about the process. I believe he actually created an entity, an LLC, and formalized it a bit more. But ultimately it was the same concept, leaving the employ of Mr. Keating with an understanding obviously of how the scheme worked because then he engaged in the scheme itself. So they learned it somewhere, and it was from working with Mr. Keating.
>
> Other than the loss amount, again, the little more formalized process of setting up his own LLC, I'm not really sure there's much more to distinguish [Zilba]. I believe the paychecks he received were for a lesser period of time than Mr. Schmenk, somewhat similar or lesser period of time than Ms. Kanary, but I think that's the most that can be said to distinguish them.

5

(Doc. 57, Sentencing Tr. Pg.ID #963-61).

The record is clear that the defendant did not play a minor or minimal role in carrying out his fake loan modification scheme and scam.

Equally to the point and pertinent: the defendant set up his bucket shop under the trust-inducing, but patently false name "Save Home Now, LLC." He created and used, as the sole authorized account holder, the firm's bank account, and he alone made its business decisions. The PSR accurately computed the defendant's role in his crimes. The lawyer neither performed ineffectively in the face of that fact nor caused the defendant any prejudice through his sentencing-related actions and arguments.

### 5. The Loss Computation Was Accurate

Defendant claims his attorney's deficient representation caused me to miscalculate the loss amount for which I found him responsible. He claims that I should only have attributed half of victim G.K.'s loss of $34,668.85. This is so, defendant claims, because "only half" of that amount "belongs to the movant." A loss of less than $40,000 would, under Guideline § 2B1.1(b)(1)(C), have reduced the loss computation four levels below the $40,000 threshold I applied under Guideline § 2B1.1(b)(1)(D).

At sentencing, defense counsel objected to the addition of sixteen levels for a loss amount of $1.8 million. But the PSR had not attributed that amount to the defendant either jointly or severally. To be sure, the PSR reflected the fact that the government's investigation had disclosed that the overall conspiracy had deceived and defrauded approximately 317 victims. Significantly, the PSR stated only nine of those victims had deposited funds directly the defendant's bogus "Save Home Now" bank account.

That does not mean the attorney's initial misfocus caused any prejudice: the record shows that the PSR had based its calculation of G.K.'s loss, $34,668.85, on the amount of money deposited directly into defendant's "Save Homes Now" bank account. As the government points out, defendant offers no basis in the record to cut that figure in half. Thus, his loss amount contention is as unsustainable as it is unsupported.

## Conclusion

There being no merit to any of the defendant's substantive performance-based challenges, there is equally no merit to his demand that the putative, but non-existent errors cumulatively justify resentencing, or an evidentiary hearing.

The crimes the defendant committed were not just devious and deliberate: they were morally depraved and utterly despicable. He is lucky that the Guidelines prescribed, despite those facts, a remarkably low sentencing range. He is even luckier that not only did I not vary upwards, but I gave him a sentence around the midpoint of that range.

The defendant should credit, not blame his attorney for that outcome.

It is, accordingly,

ORDERED THAT the defendant's motion to vacate under 28 U.S.C. § 2255 be, and same hereby is denied, with prejudice. Jurists of reason could not reasonably dispute neither this decision or its rationale; consequently I decline to issue a Certificate of Appealability.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge